02-11-137-CV EN BANC









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00137-CV

 

 


 
 
 In the Interest of A.J.M. 
 and E.A.M., Children
 
 


 

 

----------

FROM County
Court at Law No. 1 OF Parker COUNTY

----------

OPINION ON APPELLANT’S
MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION[1]

----------

After
granting appellant’s motion for rehearing and motion for en banc
reconsideration, we withdraw our prior opinion and judgment and rewrite this
court’s opinion to address appellant’s first issue on its merits.

Appellant
appeals from the trial court’s judgment terminating his parental rights to daughters
A.J.M. and E.A.M.  In four issues, he complains that the trial court erred by
denying his motion to extend the dismissal deadline and that the evidence is factually
insufficient to support the termination findings.  We hold that appellant did
not forfeit his issue on appeal regarding the trial court’s denial of his
motion to extend the dismissal deadline but that the trial court did not abuse
its discretion in denying his motion.  We also hold that the evidence is
factually sufficient to support the endangerment and best interest findings.  We
therefore affirm the trial court’s judgment.

I.  The trial court
did not abuse its discretion by denying appellant’s motion to extend the
one-year dismissal deadline.

In
his first issue, appellant argues that the trial court erred by denying his
motion to extend the mandatory statutory one-year dismissal date.  Under former
section 263.405(i) of the family code, the law in effect when the trial court
rendered this judgment, appellant was required to raise this issue in his
statement of points.[2]  However, because we have
held former section 263.405(i) to be facially invalid, we address his issue.[3]

Appellant
argues that the trial court erred when it denied his motion to extend the
dismissal date under family code section 263.401.  See Tex. Fam. Code
Ann. § 263.401(a), (b) (West 2008).  In our original opinion, we incorrectly
held that appellant had forfeited this issue because he had not included this
particular issue in his statement of points on appeal as required under former
section 263.405(i).  In re A.J.M., No. 02-11-00137-CV, 2011 WL 5984540,
at *1 (Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op.); see Act of
May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332
(repealed 2011).  The holding in our original opinion is incorrect because this
court has previously held that former section 263.405(i) violates the
Separation of Powers Clause of the Texas constitution in that it prevents an
appellant from pursuing an issue on appeal that has been properly preserved in
the trial court; thus, it unconstitutionally interferes with our
constitutionally conferred power to review the issue on the merits on appeal.  D.W.,
249 S.W.3d at 640, 645.  Therefore, we have the power to review this issue on
appeal.

Here,
appellant moved to extend the dismissal deadline of the underlying termination
suit for 108 days because he was still incarcerated in the Parker County jail and
would not be released until shortly before the scheduled trial date of February
9, 2011.  See Tex. Fam. Code. Ann. § 263.401.  He specifically asked that
the case be reset to October 7, 2011 so that after his release he could attend
the trial and also complete the parenting class and other services required by his
service plan.

First,
we note that appellant preserved this issue for appeal by bringing his request
to the trial court’s attention by written motion dated January 11, 2011.  See
Tex. R. App. P. 33.1.  Furthermore, appellant properly raised the issue on
appeal in his first issue: “The trial court erred by denying appellant’s motion
to extend the dismissal date.”

Appellant’s
requested extension date of October 7, 2011 is within the 180-day permissible
extension when counting from the Monday following the one-year anniversary of
any temporary order appointing the Texas Department of Family and Protective
Services (the Department) as managing conservator.  See Tex. Fam. Code
Ann. § 263.401(a).  Section 263.401(b) allows the trial court to extend the
dismissal deadline if the movant shows “extraordinary circumstances [that]
necessitate the child remaining in the temporary managing conservatorship of
the department and that continuing the appointment of the department as
temporary managing conservator is in the best interest of the child.”  Id.
§ 263.401(b).

At
the January 14, 2011 hearing on his motion for continuance, appellant claimed
his incarceration had prevented his ability to comply with his service plan and
his ability to show his willingness to work to get his children back.  He also
agreed that their current placement was not harmful and that the children were
not readily adoptable at that time.  Conversely, the children’s ad litem testified
that any delay in termination would delay an anticipated lengthy adoption, that
she could not recommend returning the children to the parents regardless, and
that incarceration was not an “extraordinary circumstance” justifying extension
under the statute.

We
review a trial court=s decision to grant or deny
an extension of the dismissal date under the abuse of discretion standard.  D.W.,
249 S.W.3d at 647.  The focus is on the needs of the child, whether
extraordinary circumstances necessitate the child remaining in the temporary
custody of the Department, and whether continuing such is in the best interest
of the child.  Tex. Fam. Code Ann. § 263.401(b).  The trial court is further
directed to make such findings and include them in any order granting the
extension, along with the new trial date and any further necessary temporary
orders.  Id.

Appellant
attended the continuance hearing and the permanency hearing held at the same
time, with trial counsel.  At the end of the permanency hearing, the trial court
found that appellant had “not demonstrated adequate and appropriate compliance
with the service plan.”  The trial court further declared appellant to be the
father of both children and named him a temporary possessory conservator. 
Moreover, the trial court found the guidelines for possession and access to the
children were not in their best interest and granted appellant supervised visitation
of one hour per week.  Pursuant to section 263.306(a)(13), the trial court set
the next dismissal date as April 11, 2011 and confirmed the February 9, 2011
trial date.  Tex. Fam. Code Ann. § 263.306(a)(13) (West Supp. 2011).

In
his brief on appeal, appellant argues that the trial court erred in failing to
grant his extension.  Appellant had said at the January 14 hearing that he
might be released on January 28, 2011 or April 20, 2011 and argued to keep the
children in their current placement because they were “not immediately
adoptable anyway.”  Thus, he contended that his incarceration, the search for a
“suitable relative placement,” and continuing the Department’s managing
conservatorship was in the children’s best interest.

Notably,
the children’s ad litem attorney argued against an extension because of the
children’s long-term emotional and developmental needs.  Both the ad litem and
the Department’s caseworker contended that visits with appellant had actually
been detrimental to E.A.M. in particular.

This
is all that appellant points to in support of either “extraordinary
circumstances” or the children’s alleged “best interest.”  The statute’s clear
preference is to complete the process within the one-year period.  The
legislature’s use of the language, “unless the court has commenced a trial on
the merits or granted an extension . . . the court shall
dismiss . . .,” is mandatory.  Id. § 263.401(a); see In re Tex.
Dep’t of Family & Protective Servs., 348 S.W.3d 492, 497 (Tex.
App.—Fort Worth 2011, orig. proceeding).  Furthermore, when section 263.401(a)
is read with section 263.401(b)’s language—“the court may not retain”—it is
clear that the legislature preferred and directed trial courts to complete
their state-involved terminations by the one-year anniversary.  Tex. Dep’t
of Family & Protective Servs., 348 S.W.3d at 497.  We have already
determined and held that the term “shall” is generally a mandatory term and that
the exception in section 263.401(b) must be closely followed.  Id.  Because
the statutory language prefers finality to suit and because we cannot say the
trial court abused its discretion in denying appellant’s extension, we overrule
appellant’s first issue.

II.  The evidence is
factually sufficient to support the trial court’s endangerment finding.

In
his third issue, appellant contends that the evidence is factually insufficient
to support the trial court’s endangerment finding.  As
we have explained in a similar case,

Endangerment
means to expose to loss or injury, to jeopardize. . . .

.
. . .

. . . .  Under
subsection (E), the relevant inquiry is whether evidence exists that the
endangerment of the child’s physical or emotional well-being was the direct
result of the parent’s conduct, including acts, omissions, and failures to
act.  Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.

To
support a finding of endangerment, the parent’s conduct does not necessarily
have to be directed at the child, and the child is not required to suffer
injury.  The specific danger to the child’s well-being may be inferred from
parental misconduct alone, and to determine whether termination is necessary,
courts may look to parental conduct both before and after the child’s
birth. . . .  As a general rule, conduct that subjects a
child to a life of uncertainty and instability endangers the child’s physical
and emotional well-being.

In
re J.W., No. 02-08-00211-CV, 2009 WL 806865, at *4 (Tex.
App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (citations omitted).

Even
though imprisonment standing alone does not constitute a continuing course of
conduct that endangers the physical or emotional well-being of a child, it is a
factor that we may properly consider on the issue of endangerment.  Tex.
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533–34 (Tex. 1987); In re
M.R., 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.).  The
State is not required to show that incarceration was a result of a course of
conduct endangering the child; it must show only that incarceration was part of
such a course of conduct.  Boyd, 727 S.W.2d at 533–34; M.R., 243
S.W.3d at 819.  When incarceration affects the parent’s ability to care for his
child, to provide safe living conditions, or to ensure her safety and
well-being, then such incarceration can be a part of a course of continuing
conduct.  See M.R., 243 S.W.3d at 819.  Even evidence of criminal
conduct, convictions, and imprisonment prior to the birth of a child will
support a finding that a parent engaged in a course of conduct that endangered
the child’s well-being.  In re J.T.G., 121 S.W.3d 117, 133 (Tex.
App.—Fort Worth 2003, no pet.).

Additionally,
a parent’s mental state may be considered in determining whether a child is
endangered if that mental state allows the parent to engage in conduct
jeopardizing the child’s physical or emotional well-being.  In re M.E.-M.N.,
342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).  Also, even if a
parent makes dramatic improvements before trial, “evidence of improved conduct,
especially of short-duration, does not conclusively negate the probative value
of a long history of . . . irresponsible choices.”  In re
J.O.A., 283 S.W.3d 336, 346 (Tex. 2009).  Finally, a factfinder may infer
from past conduct endangering the well-being of the child that similar conduct
will recur if the child is returned to the parent.  In re M.M., No.
02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no
pet.) (mem. op.).

Nikki
Lepori, the CPS investigator, testified that the first CPS investigation of appellant’s
family occurred in August 2007.  At that time, A.J.M. was barely three years
old, and E.A.M. was about sixteen months old.  The allegations were that appellant
had sexually abused both little girls.  The reporter, whose name Lepori could
not recall, had allegedly seen appellant fondle A.J.M.  Lepori testified that
the allegations were ruled unable to determine because the girls were
nonverbal.  In the same referral, allegations of neglectful supervision of the
children by their mother, E.J., and of physical abuse of A.J.M. by appellant
were also raised.  The reporter alleged that appellant had hit A.J.M. with his
fist, had been seen shaking her, and had left bruises on her back and legs.  In
October 2008, another report of physical abuse was made.  The allegations were
ruled out, but a case was opened to provide services for the family.  In December
2009, CPS received a report of physical neglect, which was ruled out.

Appellant
was arrested and confined in December 2009.  The children lived with their
mother until her arrest and confinement on March 29, 2010.  According to
Lepori, soon thereafter, in April 2010, CPS received another report.  At that
time, both parents were still incarcerated.  The girls were living with their
paternal grandmother.  E.A.M., who was three years old at the time, had been
spotted running up and down Bankhead Highway, which Lepori testified is busy,
going door-to-door asking for cigarettes.  A.J.M.’s school had reported that
she had come to school in the same urine-soaked clothes two days in a row. 
When Lepori went to the paternal grandmother’s home to investigate these
neglect charges, the paternal grandmother gave her a 1999 doctor’s note stating
that she was permanently physically and mentally disabled.  E.A.M., who had
just turned four before the visit, and A.J.M., who was five years old, were
unkempt and appeared not to have had baths for several days.  Lepori got the
impression that they were dressing themselves and taking care of their own
hygiene, which, she testified, they were not old enough or mature enough to
do.  Lepori also noted that the girls were covered in what appeared to be
insect bites.  CPS removed the children for physical neglect and neglectful
supervision.

Lepori
answered, “Absolutely,” when questioned whether appellant had engaged in
conduct or knowingly placed the girls with persons who engaged in conduct which
endangered their physical or emotional well-being.  Lepori explained that appellant
had chosen to break the law, risking and resulting in his incarceration and
inability to care for his daughters and that he had also left them with an inappropriate
caregiver, his mother.  Lepori also testified that neither the parents nor the
paternal grandmother appeared to have taken any steps to meet the children’s
developmental and emotional needs.

The
girls’ mother, E.J., who voluntarily relinquished her parental rights, admitted
that appellant had been arrested during the girls’ lives three to five times
and that those arrests had taken him away from them “[o]verall a little.”

E.J.
also testified that appellant had told her that he was a registered sex
offender and that he had committed the offense when he was fourteen.  Appellant
was thirty at the time of trial.  E.J. did not know who the complainant was.  Appellant
testified that the complainant had been a twelve-year-old girl.  A Parker
County Sheriff’s Office lieutenant, Mark Arnett, testified that the complainant
had been appellant’s mother, and appellant’s adult probation officer testified
that appellant had told him that the complainant had been appellant’s mother.  Appellant’s
mother refused to answer questions about whether appellant had “hurt” her when
he was a teenager, claiming her Fifth Amendment right not to testify.

Appellant
was in the Texas Youth Commission for the sexually assaultive conduct from 1994
to 2001 and is a registered sex offender.  Arnett testified that appellant also
had an extensive criminal history.  Appellant admitted to psychologist Parnell
Ryan that he had been arrested and jailed four or five times.  Specifically, appellant
told Ryan that he had been arrested for hot checks in 2001 and 2006, evading
arrest in 2001, identity theft in 2008, and unlawful possession of a firearm in
2009.  Appellant also testified that he pled guilty to harassment in 2007 but
that his probation was revoked when he committed identity theft.

Included
in the exhibits offered by the Department and admitted by the trial court are
judgments of conviction.  Petitioner’s Exhibit 2 is a judgment dated June 28,
2010, that indicates that the trial court adjudicated appellant’s guilt and
convicted him of obtaining a controlled substance by fraud, sentenced him to
five years’ confinement, and awarded credit for time served of approximately
four months.  That exhibit provides that the offense was committed in October
2003, which was before appellant’s daughters were born.  Petitioner’s Exhibit 1
is a judgment of state jail conviction for fraudulent use or possession of
identifying information.  The judgment provides that appellant committed the
offense on February 18, 2009, that he was sentenced to fifteen months’
confinement on June 28, 2010, and that he had received about three months’
credit for time served.

Petitioner’s
Exhibit 3 is an October 2009 motion to revoke appellant’s community supervision
in yet another felony case of fraudulent use or possession of identifying
information on the basis of appellant’s alleged commission of two new state
jail felony forgery offenses within a month of being placed on community
supervision.  Petitioner’s Exhibit 7 is a judgment granting that motion and
revoking appellant’s community supervison.  The judgment, dated May 21, 2010, provides
that the trial court sentenced appellant to serve fourteen months in state jail
and awarded him about six months’ credit for time served.  The judgment also
indicates that the offense was committed on February 18, 2009.  Petitioner’s
Exhibit 4, a bond recommendation, states that appellant was arrested for being
a felon in possession of a firearm on October 18, 2009, after officers found
the gun in his home pursuant to a consensual search.  Petitioner’s Exhibit 6 is
a May 2010 judgment of conviction for the felony offense of unlawful possession
of a firearm by a felon.  The judgment provides that the offense occurred on
September 18, 2009, that appellant was sentenced to three years’ confinement,
and that he received credit for time served of about six months.  Finally, on
April 22, 2010, appellant was found guilty of “Parent Contributing to
Nonattendance” regarding A.J.M.’s absences from school and fined $584.00.  Appellant
was incarcerated at the time.

E.J.
testified that she did not realize that appellant was a felon.  She admitted
that he had had a gun in the house before his most recent arrest.

Appellant’s
probation officer testified that appellant has a temper and is sometimes
unstable.  The probation officer also testified that he did not see appellant as
a person who learns from his mistakes and predicted that he would continue to commit
crimes.  Ryan reported that appellant’s intellectual function was in the low
average range.  Regarding appellant’s social and emotional functioning, Ryan
reported that appellant

presented as someone
with a history of antisocial behaviors beginning as an adolescent[,] which
appear to not have been addressed[,] bringing about cyclical behaviors with
strong consequences.  [Appellant] seems willing to place himself in risky
situations and practice irresponsible actions which prevent him from
consistently meeting life responsibilities.  [Appellant] appears able to
identify right from wrong, yet his beliefs and values seem self-sabotaging. . . .
[Appellant] has poor awareness of what he has to change in order to prevent himself
from being in his current life situation.  [Appellant] tends to minimize and
justify his problematic behaviors . . . .

. . . . 
[Appellant] does not seem to profit from past mistakes.  [Appellant] appears to
show poor judgment. . . .

Appellant
appeared at trial with two black eyes.  He had been in a fight with another
inmate at the jail.  He admitted that he had been incarcerated for about a
third of E.A.M.’s life.  When asked why he chose to continue to break the law,
he answered, “People’s got their own way of thinking.”  He admitted that he
knew that it was a problem for him to have a gun in the house as a felon but contended
that he kept the gun anyway because he was a repo man.  Later, he testified
that he would be able to be a repo man without a gun.

Appellant
denied that he or anyone else in the home had ever abused the girls.  He
admitted that he had left the girls with his mother and E.J. when he went to
jail and prison.  He testified that he thought his mother was competent to take
care of the girls.  He also testified that she was the only person he had
available to take care of the girls.  When asked whether she could handle their
behavioral issues as reported by the Department—they were difficult to control,
they had nightmares, and they wet the bed—he answered that he did not know.  He
testified that there were no bug infestations when he lived with his mother.

Applying
the appropriate standard of review, see In re H.R.M., 209 S.W.3d
105, 108 (Tex. 2006), we hold that the trial court could have reasonably formed
a firm conviction or belief that appellant engaged in conduct or knowingly
placed his daughters with persons who engaged in conduct which endangered their
physical or emotional well-being, and we therefore hold that the evidence is factually
sufficient to support termination on that ground.  See Tex. Fam. Code
Ann. § 161.001(1)(E) (West Supp. 2011).  We overrule appellant’s third
issue.

III.  We do not reach
appellant’s second issue concerning the trial court’s finding under subsection
(Q).

Along
with a best interest finding, a finding of only one ground alleged under
section 161.001(1) is sufficient to support a judgment of termination.  In
re E.M.N., 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).  We
therefore do not reach appellant’s second issue contending that the evidence is
factually insufficient to support termination under subsection (Q).  See
Tex. Fam. Code Ann. § 161.001(1)(Q).

IV.  The evidence is
factually sufficient to support the trial court’s best interest finding.

In
his fourth issue, appellant contends that the evidence is factually
insufficient to support the best interest finding.  There is a strong
presumption that keeping a child with a parent is in the child’s best interest. 
In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  See Tex. Fam. Code Ann. § 263.307(a)
(West 2008).  Nonexclusive factors that the trier of fact in a termination case
may use in determining the best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical
needs of the child now and in the future;

(C)     the emotional and physical
danger to the child now and in the future;

(D)     the parental abilities of the
individuals seeking custody;

(E)     the programs available to
assist these individuals to promote the best interest of the child;

(F)     the plans for the child by
these individuals or by the agency seeking custody;

(G)     the stability of the home or
proposed placement;

(H)     the acts or omissions of the
parent which may indicate that the existing parent-child relationship is not a
proper one; and

(I)      any excuse for the acts or
omissions of the parent.

Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976).

These
factors are not exhaustive.  Some listed factors may be inapplicable to some
cases; other factors not on the list may also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be
sufficient in a particular case to support a finding that termination is in the
best interest of the child.  Id.  On the other hand, the presence of
scant evidence relevant to each factor will not support such a finding.  Id.

The Department
caseworker testified that the girls were together in a therapeutic foster home,
their second home since the April 2010 removal.  She explained that “they have
some behavior issues and other issues that do not make them appropriate for
just a regular foster home.”  When the Department removed them, they urinated
and defecated on themselves and furniture and smeared feces.  They continued to
have night terrors and take psychotropic medications.  E.A.M. had a speech
impediment, a phonological disorder, and an expressive language disorder and was
receiving speech therapy.  The girls’ former therapist testified that E.A.M. had
“issues,” that she was “very active or even hyperactive,” and that it was “hard
to . . . get her to focus.”  Both girls were receiving counseling.

The
caseworker stated that the girls had improved since coming into care but that they
were going to need extra attention and effort in the future and are “[n]ot what
you would call normal.”  The caseworker opined that appellant would not be able
to deal with the girls’ special needs.  She stated that he had not demonstrated
an understanding of the neglect triggering the removal, the girls’ emotional
and psychological issues, or their developmental delays.  Ryan reported that appellant
was unaware of his daughters having any special developmental needs or
behavioral problems.  Ryan also testified that with appellant’s “level of
functioning and education and his viewpoints,” he would not be able to properly
care for an “average, every[]day, happy six[-]year[-]old,” much less a child
with “any form of special needs or any abuse history or neglect history [who]
has compound issues and possibly psychiatric issues that would require
medication.”

Appellant
testified that he did not think that the girls had any speech or developmental
delays.  But he also stated that he would continue their medications and
therapy if he regained custody, as well as provide for their basic needs.

Appellant
testified that he had seen the girls once since his December 2009
incarceration; trial was March 23, 2011.  E.A.M. acted out during that visit. 
The caseworker testified that E.A.M.’s behavior had also deteriorated after
that visit.

The
CASA volunteer testified that the girls had told her that they missed their
parents and wanted her to send the pictures they colored to them.  E.J.
testified that the girls love appellant very much and are both “daddy’s girls,”
and appellant’s mother testified that the girls love him.  The caseworker
admitted that the girls had occasionally indicated that they missed him but said
that they had stated nothing in depth or lengthy.  She testified that the case
notes indicated that the girls had expressed a dislike or hatred of appellant.

Vida
Phoenix, the girls’ former therapist who treated them for more than a year,
testified that the girls never introduced the subject of their father.  She did
not note any upset feelings or yearning for him at all.  She admitted that a couple
of her notes showed that E.A.M. had spoken of hating appellant in two sessions
soon after her visit with him.  But Phoenix testified that there was no
evidence that the girls did not want to see or talk to their father.  She also
testified that she saw no evidence that the girls had a strong bond with him.

The Department
caseworker opined that termination of appellant’s parental rights would be in
the children’s best interest.  E.J. admitted that terminating appellant’s
rights would be in the children’s best interest so that they could have some
permanency and stability.  Appellant’s mother agreed that he was not able to
take care of them at the time of trial because he was confined.  Appellant
admitted that he believed that he needed additional time to be a better
parent.  He was also willing to utilize services the Department could offer,
like counseling, to improve his ability to parent.  The caseworker acknowledged
that providing services to appellant while he was incarcerated was difficult.

According
to the caseworker, no relative or fictive relative had come forward to be
considered as a possible placement.  The caseworker believed that the children were
adoptable but admitted that no prospective adoptive homes had been brought to the
Department’s attention.

Reviewing
all the evidence with appropriate deference to the factfinder, see H.R.M.,
209 S.W.3d at 108, we hold that the trial court could have reasonably formed a
firm conviction or belief that termination of the parental relationship between
appellant and daughters A.J.M. and E.A.M. is in the girls’ best interest, and
we therefore hold that the evidence is sufficient to support the best interest
finding.[4] 
We overrule appellant’s fourth issue.

V.  We
affirm the trial court’s judgment.

Having overruled appellant’s dispositive
issues, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

EN BANC

WALKER, J., filed a concurring opinion in
which GABRIEL, J., joins.

DAUPHINOT, J., filed a dissenting and concurring
opinion, in which MEIER, J., joins.

DELIVERED:  July 16, 2012  


 
 
 
 
 
 


 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00137-CV

 

 


 
 
 In the Interest of A.J.M. 
 AND E.A.M., CHILDREN
 
 


 

 

----------

 

FROM COUNTY Court
AT LAW NO. 1 OF PARKER COUNTY

----------

 

CONCURRING OPINION ON
APPELLANT’S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION

----------

 

          I concur in the
result reached by the majority.  I write separately to clarify what I
understand to be the holding of In re D.W., 249 S.W.3d 625 (Tex.
App.—Fort Worth), pet. denied, 260 S.W.3d 462 (Tex. 2008).[5]

          In D.W.,
an en banc majority of this court held:

Section 263.405(i)[[6]]
interferes with our power to exercise discretion in determining whether to
consider issues not listed in a statement of points, even in absence of
prejudice to the Department.  The statute bars our consideration of all issues
not listed even when they were properly preserved for review under the rules of
procedure.  In effect, the legislature decides for us that complaints not
listed in a timely statement of points are waived.  In so doing, section
263.405(i) infringes upon our ability to exercise a “core power” reserved for
the judicial branch by telling us not only how we must rule on issues
brought before us but that we cannot consider those issues at all.  We hold
that section 263.405(i) is, therefore, void as a violation of the separation of
powers provision of the Texas constitution. . . .

 

Because section
263.405(i) is void, we are not barred by that statute from considering points
that were not listed in a statement of points so long as they were properly
preserved for appellate review.

Id. at
645.  Though our holding was not worded as precisely as it could have been, my
understanding was that we declared section 263.405(i), as applied to Betty,
the mother involved in the appeal, or to other similarly situated parents,
violative of the separation of powers provision of the Texas constitution.  We
used the word “void” but nonetheless limited our holding that the provision was
void to situations, like Betty’s, in which points (or issues) sought to be
raised on appeal had been properly preserved for appellate review in the trial
court.  See id.  Consequently, despite our use of the word void, we
declared section 263.405(i) void, only as applied to Betty, because she had
properly preserved in the trial court the issues she sought to raise on appeal.

          In
challenging the constitutionality of a statute, a party may show that the
statute is unconstitutional on its face or as applied. Tex. Workers’ Comp.
Comm’n v. Garcia, 893 S.W.2d 504, 518 n.16 (Tex. 1995); see also City of
Corpus Christi v. Pub. Util. Comm’n of Tex., 51 S.W.3d 231, 240–41 (Tex.
2001) (Owen, J., concurring).  Facial challenges to the constitutionality of a
statute are disfavored and generally permitted only in the context of the First
Amendment. Nat’l Endowment for the Arts v. Finley, 524 U.S. 569, 580,
118 S. Ct. 2168, 2175 (1998); Combs v. STP Nuclear Operating Co., 239
S.W.3d 264, 272 n.8 (Tex. App.—Austin 2007, pet. denied).  To sustain a facial
challenge, the challenging party bears the heavy burden of demonstrating that
the statute is unconstitutional in all of its applications.  In re
Commitment of Fisher, 164 S.W.3d 637, 655 (Tex.), cert. denied, 546
U.S. 938 (2005).  A statutory provision is not facially unconstitutional unless
no set of circumstances exists under which the statute may be constitutionally
applied.  HCA Healthcare Corp. v. Tex. Dep’t of Ins., 303 S.W.3d 345,
349 (Tex. App.—Austin 2009, no pet.).  To sustain an as-applied challenge, the
party must show that the statute is unconstitutional when applied to that
particular person or set of facts.  Garcia, 893 S.W.2d at 518.  As-applied
challenges are fact specific and must be brought on a case-by-case basis.  Combs,
239 S.W.3d at 272 n.8.

Implicit
in our D.W. holding—that section 263.405(i) is void as violating the
separation of powers provision of the Texas constitution when it operates to
bar this court from considering points presented on appeal that were properly
preserved in the trial court—is the holding that section 263.405(i) does not
operate unconstitutionally when it bars this court from considering points that
were not properly preserved in the trial court.  Nor would section 263.405(i)
operate unconstitutionally if an attorney was able to list in a timely filed
statement of points all issues that he desired to raise on appeal. 
Consequently, in D.W. we did not hold that Betty had met the heavy
burden of demonstrating that section 263.405(i) was unconstitutional in all of
its applications, as required to establish that a statute is facially
unconstitutional.  See generally 249 S.W.3d at 645.

Because D.W.
simply declared section 263.405(i) void and unconstitutional as applied to
Betty and as applied to the particular set of facts that exist when the section
operates to preclude us from reviewing appellate issues raising preserved
error, not facially unconstitutional, I believe the majority opinion and the
dissenting and concurring opinion create and address a stare decisis issue when
none exists in fact.  As cited above, the supreme court did not overrule D.W.;
the supreme court denied petition for review in D.W., leaving intact
this court’s en banc determination that section 263.405(i) was unconstitutional
as applied to Betty and, ultimately, as applied to other parents similarly
situated to Betty who raise an as-applied challenge.  Because an as-applied
challenge must be made by each appellant claiming that section 263.405(i)
operates unconstitutionally or is void as applied to them, when an appellant
did not make an as-applied constitutional challenge to section 263.405(i), we
followed the dictates of that provision and refused to consider an appellate
issue not set forth in the statement of points.  See, e.g., In re G.G.C., No. 02-10-00354-CV, 2011
WL 1600840, at *3 (Tex. App.—Fort Worth April 28, 2011, pet. denied) (mem. op.)
(refusing to consider legal and factual sufficiency of evidence issues not set
forth in statement of points); In re H.S.B., No. 02-10-00324-CV, 2011 WL
1434948, at *1 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.)
(refusing to consider complaint that Department violated family code by not
placing children with couple that mother suggested when that complaint not set
forth in statement of points); In re O.E.W.-K., No. 02-10-00199-CV, 2011
WL 1225470, at *24 n.35 (Tex. App.—Fort Worth Mar. 31, 2011, no pet.) (mem.
op.) (refusing to consider issues regarding admission of evidence that were not
set forth in statement of points); In re K.B., No. 02-09-00441-CV, 2010
WL 4028107, at *15 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.)
(refusing to consider constitutional challenge to section of family code not
set forth in statement of points); accord In re M.E.-M.N., 342
S.W.3d 254, 260 (Tex. App.—Fort
Worth 2011, pet. denied) (granting motion for supplemental briefing and
ordering that points in appellate brief be treated as statement of points for
appeal when appointed trial counsel allowed to withdraw and appellate counsel
not appointed within time to file statement of points); In re E.H., No.
02-09-00134-CV, 2010 WL 520774, at *2 n.3 (Tex. App.—Fort Worth Feb. 11, 2010, no pet.) (mem. op.) (addressing
sufficiency complaints not raised in statement of points based on supreme
court’s holding in In re J.O.A., 283 S.W.3d 336, 339 (Tex. 2009)).  When
appellants have made an
as-applied constitutional challenge to section 263.405(i), we have addressed
the merits of their issues, even when those issues were not presented in a
timely filed statement of points.  See In re J.T.V.H., No. 02-10-00416-CV,
2011 WL 4916388, at *20 & n.17 (Tex. App.—Fort Worth Oct. 13, 2011, no
pet.) (mem. op.) (addressing issue not set forth in statement of points when
parent contended on appeal that statute requiring statement of points was void). 
Thus, especially in light of the fact that the legislature has repealed former
section 263.405(i),[7] so that our holding in D.W.––whether
a declaration of facial or as-applied unconstitutionality––has been statutorily
abrogated, I do not believe this case is deserving of en banc submission.
          Because in the present case, Father raised in his appeal and in his
statement of points an issue arguing that section 263.405(i) violates the
separation of powers provision of the Texas constitution, I would hold that
Father made an as-applied challenge to the constitutionality of section
263.405(i), and based on our holding in D.W., I would reach the merits
of his issues.  Thus, I concur with the majority opinion’s disposition of
Father’s appeal.

 

 

 

SUE WALKER

JUSTICE

 

GABRIEL, J., joins.

 

DELIVERED:  July 16, 2012

 

 












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00137-CV

 

 


 
 
 In the Interest of A.J.M. 
 and E.A.M., Children
 
 


 

 

----------

FROM County
Court at Law No. 1 OF Parker COUNTY

----------

DISSENTING AND
CONCURRING OPINION ON

APPELLANT’S MOTION
FOR REHEARING AND

MOTION FOR EN BANC
RECONSIDERATION[8]

----------

Although
I agree with the majority that the evidence is factually sufficient to support
termination and that the trial court’s judgment should be affirmed, I dissent
from the majority’s reaffirming of In re D.W.[9]
to reach the merits of Appellant’s first issue.  I would hold, as we held in
our original unanimous panel opinion, that Appellant forfeited his first issue.

This
is not a case in which no statement of points was filed, nor is it a case in
which the statement of points was filed late.  Rather, this case is one in
which the timely-filed statement of points violates the express provisions of
former section 263.405(i),[10]
a section which litigants, counsel, and the judiciary would probably all agree
abysmally failed to meet its purpose of shortening the time that children in
these cases are left in limbo.[11]

In
2008, this court held in D.W. that former section 263.405(i) is “void as
a violation of the separation of powers provision of the Texas constitution.”[12]  We specifically
held that the statute is facially void

because it violates
the Separation of Powers Clause of the constitution to the extent that it
forecloses our power to review issues properly preserved for appeal because the
statute unduly interferes with our substantive power as an appellate court to
rehear and determine issues on the merits that were decided in the court below.[13]

But
the Supreme Court of Texas has done nothing to signal its support of our
holding.  In its opinion denying the petition for review of D.W., the
Supreme Court of Texas stated, “[W]e neither approve nor disapprove the holding
of the court of appeals regarding the constitutionality of Texas Family Code
section 263.405(i).”[14]

And
the Supreme Court of Texas has signaled its rejection of D.W.  Almost a
year after denying the petition for review in D.W., the Supreme Court of
Texas upheld an as-applied challenge to the statute in In re J.O.A., but
it also provided the following advice for trial courts and counsel to increase
compliance with the statute that our court had previously held void ab initio:

Part
of the problem here may be resolved by better communication between trial court
and counsel.  Often in these cases, there is a transition from trial to
appellate counsel after rendition.  Because of the accelerated appellate
timetable and the critical fifteen-day deadline for the statement of points,
and because trial and appellate counsel are often different people, there can
be misunderstandings as to which attorney is responsible for filing a motion
for new trial, a statement of points on appeal, and a notice of appeal.

Given
the accelerated timetable, the burden should logically fall on trial counsel .
. . .  As one court of appeals has noted, the fifteen-day deadline is a trap
for the unwary.  That court of appeals has further suggested that trial courts
should alert parents to the requirements of section 263.405 at the end of the
final order terminating parental rights.  We agree and suggest further that the
best way to avoid ineffective assistance of counsel claims in the future is for
the trial courts to take a proactive approach, assuring that indigent parents
do not inadvertently waive their appellate rights under the Family Code. 
Because of the accelerated nature of these cases, trial courts must act expeditiously
when appointing new counsel for the appeal.[15]

No
justice dissented from the opinion, which did not mention D.W.

Justice
Willett filed a concurring opinion in which he “stress[ed] steps that trial
courts can take” to ensure that attorneys preserve their clients’ appellate
rights by filing timely statements of points and that attorneys do not, in any
case, “intentionally eva[de] appellate requirements.”[16]  The concurrence also did not
mention D.W.

Almost
nine months later, the Supreme Court of Texas handed down its opinion in In
re J.H.G.,[17]
a case in which the mother, like the father in the case at bar, also filed a
timely statement of points but did not raise her issue concerning the trial
court’s extension of the statutory deadline in the statement of points.  The
Supreme Court of Texas held,

The
mother timely filed a statement of points with the trial court contesting the
legal and factual sufficiency of the evidence, but she did not challenge the
trial court’s extension of the statutory deadline.  The Family Code requires
that any party seeking an appeal of a final order must file with the trial
court a statement of points of error on which it intends to appeal.  The
statement of points must be filed within fifteen days of entry of the final
order.  The court of appeals may not address an issue that is not included in a
timely filed statement of points.  Although the mother did not include the
trial court’s failure to dismiss in her points for appeal, the court of appeals
held that the issue was not waived because it bore on the trial court’s subject
matter jurisdiction.  This holding is directly contrary to our decision in In
re Department of Family and Protective Services, in which we held that the
section 263.401(a) dismissal date is procedural, not jurisdictional.  As such,
the mother’s failure to challenge the trial court’s extension of the statutory
deadline in her statement of points waived the issue on appeal.[18]

The
unanimous per curiam opinion did not mention D.W.  But by applying
former section 263.405(i) to bar a parent from presenting an issue on appeal,
the Supreme Court of Texas nevertheless rejected completely, sub silentio,
our en banc holding in D.W. that the statute is void ab initio.  I
believe that we are bound to accept this rejection, however subtle.[19]

And
all seven members of this court have done so.  Since soon after the Supreme
Court of Texas handed down J.H.G., six of the seven members of this
court have authored or joined unanimous panel opinions explicitly following J.H.G.
and implicitly recognizing the Supreme Court of Texas’s rejection of D.W.[20]  Finally, even
the seventh member of the court has authored a unanimous panel opinion citing J.H.G.
and former section 263.405(i) for the proposition that a party’s failure to
include an issue in its statement of points results in forfeiture—

[F]amily code section
263.405(i) prohibits an appellate court from considering “any issue that was
not specifically presented to the trial court in a timely filed statement of
points . . . or in a statement (of points) combined with a motion for new
trial.”  [Tex. Fam. Code. Ann.] § 263.405(i); see In re J.H.G., 302
S.W.3d 304, 306 (Tex. 2010) (“The court of appeals may not address an issue
that is not included in a timely filed statement of points.”)[21]

—without
citing D.W. and without stating that this court had previously held the
quoted statute facially void.

I
believe that our court should therefore now explicitly recognize that the
Supreme Court of Texas has rejected D.W. and that we are bound to do the
same.  I would follow the statute and J.H.G. and hold that Appellant
forfeited his first issue on appeal by not specifically presenting it to the
trial court in his statement of points.[22] 
Because the majority instead reaches the merits of the issue by reaffirming our
holding in D.W. that section 263.405(i) is void—despite all contrary
signals from the Supreme Court of Texas—I respectfully dissent from the
majority’s treatment of Appellant’s first issue.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

MEIER, J., joins.

 

DELIVERED:  July 16, 2012









[1]See Tex. R. App. P. 49.7.





[2]See Act of May 12, 2005, 79th Leg.,
R.S., ch. 176, § 1, 2005 Tex.
Gen. Laws 332, 332, repealed by Act of April 29, 2011, 82nd Leg., R.S.,
ch. 75, §§ 5, 8, 2011
Tex. Sess. Law Serv. 348, 349 (West); In re J.H.G., 302 S.W.3d 304, 306
(Tex. 2010).





[3]Compare In re D.W., 249 S.W.3d 625,
640, 645 (Tex. App.—Fort Worth 2008) (en banc), pet. denied, 260 S.W.3d
462 (Tex. 2008), with J.H.G., 302 S.W.3d at 306 (applying former section
263.405(i) and holding that failure to assert denial of extension in statement
of points on appeal barred appellate review where constitutionality of
section not raised or presented).





[4]See Tex. Fam. Code Ann. § 161.001(2).





[5]The undersigned author was not a member of the original three-judge
panel in D.W.





[6]All references are to the former section 263.405(i).  See
Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws
332, 332 (adding subsection (i), requiring statement of points, to section
263.405 of the family code), repealed by Act effective Sept. 1, 2011,
82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Gen. Laws 348, 349 (deleting
subsection (i) but noting that former section 263.405 remains in effect for
final orders rendered before September 1, 2011).





[7]See Act effective Sept. 1, 2005, 79th
Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (adding subsection (i),
requiring statement of points, to section 263.405 of the family code), repealed
by Act effective Sept. 1, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011
Tex. Gen. Laws 348, 349 (deleting subsection (i) but noting that former section
263.405 remains in effect for final orders rendered before September 1, 2011).





[8]See
Tex. R. App. P. 49.7.





[9]249
S.W.3d 625, 645 (Tex. App.—Fort Worth) (en banc), pet. denied, 260 S.W.3d
462 (Tex. 2008) (per curiam).





[10]Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (adding
subsection (i), requiring statement of points, to section 263.405 of the family
code), repealed by Act effective Sept. 1, 2011, 82nd Leg., R.S., ch. 75,
§§ 5, 8, 2011 Tex. Gen. Laws
348, 349 (deleting subsection (i) but noting that former section 263.405,
including subsection (i), is still in effect for final orders rendered before
September 1, 2011).





[11]See In re E.A.R., 201 S.W.3d 813,
814–15 & n.2 (Tex. App.—Waco 2006, no pet.) (Vance, J., concurring)
(quoting House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex.
H.B. 409, 79th Leg., R.S. (2005)).





[12]249 S.W.3d at 645.





[13]Id. at 640.





[14]260 S.W.3d at 462.





[15]In re J.O.A., 283 S.W.3d 336, 343–44
(Tex. 2009) (citations omitted).





[16]Id. at 347–48 (Willett, J.,
concurring).





[17]302 S.W.3d 304 (Tex. 2010).





[18]Id. at 306 (citations omitted).





[19]See Lubbock Cnty., Tex. v. Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (stating that once the Supreme
Court of Texas announces a proposition of law, the decision becomes binding
precedent, and “it is not the function of a court of appeals to abrogate or
modify established precedent”).





[20]In re A.S.D., No. 02-10-00255-CV, 2011
WL 5607608, at *1 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.)
(citing J.H.G. for proposition that court is prohibited from addressing
issue parent did not raise in statement of points); In re G.A.H., No.
02-11-00015-CV, 2011 WL 4711980, at *7 (Tex. App.—Fort Worth Oct. 6, 2011, no
pet.) (mem. op.) (same); In re G.G.C., No. 02-10-00354-CV, 2011 WL
1600840, at *3 (Tex. App.—Fort Worth Apr. 28, 2011, pet. denied) (mem. op.)
(same); In re H.S.B., No. 02-10-00324-CV, 2011 WL 1434948, at *1 (Tex.
App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.) (same); In re O.E.W.-K.,
No. 02-10-00199-CV, 2011 WL 1225470, at *24 n.35 (Tex. App.—Fort Worth Mar. 31,
2011, no pet.) (mem. op.) (same); In re K.B., No. 02-09-00441-CV, 2010
WL 4028107, at *15 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.)
(same); but see In re J.T.V.H., 02-10-00416-CV, 2011 WL 4916388, at *20
& n.17 (Tex. App.—Fort Worth Oct. 13, 2011, no pet.) (assuming without
deciding that issue was preserved despite parent’s failure to file statement of
points when parent also contended on appeal that statute was void).





[21]In re M.E.-M.N., 342 S.W.3d 254, 260
(Tex. App.—Fort Worth 2011, pet. denied).





[22]See In re J.L.J., 352 S.W.3d 536,
540–41 (Tex. App.—El Paso 2011, no pet.); In re J.J.C., 302 S.W.3d 436,
444 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).