

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00358-CV

IN THE INTEREST OF M.E.-M.N,
MINOR CHILD

----------

## FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

## I. Introduction

Appellant S.G. appeals the judgment terminating her parental rights to M.E.-M.N. She contends in four issues that the trial court abused its discretion by finding her appeal frivolous, that she was denied effective assistance of counsel during the post-trial period, and that the evidence is legally insufficient to support the trial court's endangerment findings. We affirm.

## II. Factual Background

On May 9, 2008, the Texas Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision of two-year-

old M.E.-M.N.  The referral alleged that, while M.E.-M.N. was present, Appellant had passed out in a car at a methadone clinic where Appellant had been receiving treatment to overcome her addiction to opiates.  Department investigator Stephanie Kolb subsequently visited Appellant's residence and knocked on the door, but no one answered.  Kolb then heard what seemed like a small child telling her to come inside, but no one answered after Kolb knocked again.  Kolb called for law enforcement, fearing that the child might be in the home unattended, and law enforcement entered the home.  Inside, Kolb found M.E.-M.N., Appellant, and Appellant's friend Danny Lee.

Kolb interviewed Appellant and learned that she had a history of prescription drug abuse and that Appellant no longer had custody of her two oldest children.  After conducting further investigation—including positive drug test results for both Appellant and M.E.-M.N.—and unsuccessfully attempting to find suitable, short-term housing for M.E.-M.N., Kolb recommended on May 19, 2008, that M.E.-M.N. be placed into foster care.

### III.  Procedural Background

The Department initiated this termination proceeding against Appellant and C.N., M.E.-M.N.'s biological father, on May 20, 2008.[1]  Although Appellant initially had retained counsel, her retained attorney withdrew in February 2009.  The trial court then found Appellant indigent and appointed new trial counsel.

---

[1]C.N. has not appealed the termination of his parental rights to M.E.-M.N.

After the September 2009 bench trial, the trial court terminated Appellant's parental rights to M.E.-M.N., finding that Appellant had knowingly placed or knowingly allowed M.E.-M.N. to remain in conditions or surroundings which endangered M.E.-M.N.'s physical or emotional well-being and engaged in conduct or knowingly placed M.E.-M.N. with persons who engaged in conduct which endangered the physical or emotional well-being of M.E.-M.N. and that termination of Appellant's parental rights was in M.E.-M.N.'s best interest.[2] On September 28, 2009, before the trial court signed the final order of termination, Appellant's trial counsel filed a notice of appeal on Appellant's behalf. Also on September 28, 2009, Appellant's trial counsel filed, and the trial court granted, an "Agreed Motion to Withdraw as Counsel."[3] The trial court did not, however, appoint appellate counsel for Appellant, despite her indigence. The trial court signed the final order of termination on October 6, 2009, but Appellant did not file a motion for new trial or a statement of points for appeal.

After Appellant failed to timely file her appellate brief, we abated the appeal and remanded the case to the trial court so that the trial court (1) could determine whether Appellant was indigent and desired to continue the appeal, (2) could appoint appellate counsel for Appellant, and (3) could permit Appellant to develop an evidentiary record as to whether she was denied effective assistance

---

[2]*See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (2) (Vernon Supp. 2010).

[3]The "agreed order" permitting withdrawal of Appellant's trial counsel was signed by Appellant's trial counsel and the Department's attorney, but it was not signed by Appellant.

3

of counsel during the thirty-day period following the final order of termination. *See In re K.K.*, 180 S.W.3d 681, 687–88 (Tex. App.—Waco 2005, order) (abating appeal for determination of whether parent was denied effective assistance of counsel on appeal by failing to file brief), *disp. on merits*, No. 10-04-00303-CV, 2006 WL 561820 (Tex. App.—Waco Mar. 8, 2006, no pet.); *In re S.D.S.*, No. 07-04-00261-CV, 2004 WL 1879649, at *1 (Tex. App.—Amarillo Aug. 23, 2004, order) (same), *disp. on merits*, 2005 WL 1038817 (Tex. App.—Amarillo May 3, 2005, pet. denied).

On remand, the trial court found that Appellant was indigent and wanted to prosecute the appeal, and the trial court appointed appellate counsel for Appellant. Appellant's new counsel then filed an "emergency motion to comply with abatement order," and the trial court conducted a hearing on May 6, 2010. After the May 6 hearing, the trial court found that Appellant was not represented by counsel during the thirty-day period following entry of the final order of termination, that no points of appeal were filed by Appellant's trial counsel, and that Appellant's appeal would be frivolous. *See* Tex. Fam. Code Ann. § 263.405(d)(3) (Vernon 2008).

On June 2, 2010, Appellant filed her appellate brief and a "motion to extend time to file the brief and/or allow for supplementation of the brief." We granted Appellant's motion and stated that "it is clear from the record and the findings of the trial court that Appellant was not represented by counsel during the post-judgment time for filing a statement of points and motion for new trial." We also ordered (1) that the court reporter prepare and file a complete reporter's

4

record without cost to Appellant, (2) that Appellant file a supplemental brief within twenty days of the filing of the reporter's record, and (3) that we would "treat Appellant's complaints raised in her brief as a sufficient statement of points on appeal." Appellant then timely filed her supplemental brief.

## IV. Discussion

Appellant contends in four issues that the trial court abused its discretion by finding that her appeal would be frivolous,[4] that she was denied effective assistance of counsel in the post-trial period, and that the evidence is legally insufficient to support the trial court's endangerment findings.[5]

### A. Trial Court's Frivolousness Finding

In the second issue of her initial brief and in the first issue of her supplemental brief, Appellant contends that the trial court abused its discretion by finding that her appeal would be frivolous. *See* Tex. Fam. Code Ann. § 263.405(d)(3). The trial court signed the final order of termination on October 6, 2009, but did not sign the order containing the frivolousness finding until May 6, 2010, well beyond the thirty-day deadline in section 263.405(d). *See id.* § 263.405(d). Although we abated this appeal on April 8, 2010, and remanded it to the trial court, we remanded only for limited reasons and ordered that this appeal would be "automatically reinstated without further order" upon "our receipt of the

---

[4]Appellant's two briefs contain four total issues, but the second issue in her initial brief and the first issue in her supplemental brief each challenge the trial court's finding that her appeal would be frivolous.

[5]Appellant does not challenge the trial court's finding that termination of her parental rights is in M.E.-M.N.'s best interest.

5

supplemental record." The supplemental record was filed with this court on May 5, 2010. Thus, the trial court lost its abatement jurisdiction on May 5, 2010, but signed the frivolousness order the following day. *See generally Lewis v. State*, 711 S.W.2d 41, 43 (Tex. Crim. App. 1986) (holding trial court exceeded its authority by conducting evidentiary hearing outside scope of abatement mandate). The Department suggests, and we agree and hold that the trial court did not have jurisdiction on May 6, 2010, to render the frivolousness order and that the frivolousness order is void. Therefore, we need not decide whether the trial court abused its discretion by finding Appellant's appeal frivolous, and we overrule the second issue of Appellant's initial brief and the first issue of Appellant's supplemental brief. *See* Tex. R. App. P. 47.1.

## B. Ineffective Assistance of Counsel

In the first issue of her initial brief, Appellant contends that she was illegally denied effective assistance of counsel during the post-trial period because the trial court permitted her appointed trial counsel to withdraw but did not timely appoint appellate counsel.

Indigent persons in government-initiated parental-rights termination cases have a statutory right to counsel, and that right includes the right to effective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 543 (Tex. 2003). To successfully assert an ineffective assistance of counsel claim on appeal in a termination case, the appellant must show (1) that counsel failed to perform in a reasonably effective manner and (2) that "the deficient performance prejudiced the defense, which 'requires showing that counsel's errors were so serious as to

6

deprive the defendant of a fair trial, a trial whose result is reliable.'" *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (quoting *M.S.*, 115 S.W.3d at 545); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

Family code section 263.405(b) provides that an appellant in a parental termination proceeding must, within fifteen days of the final termination order, file a motion for new trial or a statement of points for appeal if an appeal is sought. *See* Tex. Fam. Code Ann. § 263.405(b). Further, family code section 263.405(i) prohibits an appellate court from considering "any issue that was not specifically presented to the trial court in a timely filed statement of points . . . or in a statement [of points] combined with a motion for new trial." *Id.* § 263.405(i); *see In re J.H.G.*, 302 S.W.3d 304, 306 (Tex. 2010) ("The court of appeals may not address an issue that is not included in a timely filed statement of points.").

It is undisputed that Appellant was indigent but unrepresented by counsel during the fifteen-day period following entry of the final order of termination. However, the trial court did eventually appoint appellate counsel for Appellant. Moreover, we granted Appellant's motion on appeal for supplemental briefing and ordered that we would treat the complaints in her appellate brief as a sufficient statement of points for appeal. Thus, although Appellant was denied appointed counsel during the fifteen-day period following the final order of termination, Appellant has had the opportunity, with the assistance of appointed appellate counsel, to fully present and brief any issues she wished to pursue on appeal. Although the trial court should have promptly appointed appellate counsel for Appellant when it permitted her trial counsel to withdraw, Appellant

7

has not established that she was prejudiced by the trial court's failure to timely appoint appellate counsel. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (holding appellant "failed to demonstrate that her counsel's performance prejudiced her defense"). We therefore overrule the first issue in Appellant's initial brief.

## C. Legal Sufficiency of the Evidence

In the second issue of her supplemental brief, Appellant contends that the evidence is legally insufficient to support the trial court's endangerment findings "because the only evidence of child endangerment are conclusory statements by two ongoing case workers."[6]

### 1. Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *M.S.*, 115 S.W.3d at 547. "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed

---

[6]Appellant's supplemental brief sets forth the standards for reviewing the legal and factual sufficiency of the evidence, but she states her second issue as challenging only the legal sufficiency of the evidence, her argument section does not contain argument concerning the factual sufficiency of the evidence, and she seeks only reversal and rendition. Thus, we do not address whether the evidence is factually insufficient to support the trial court's endangerment findings.

8

merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d at 573. We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in

9

favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

### 2. Applicable Law

Endangerment means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under section 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of Appellant's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d at 125; *see also* Tex. Fam. Code Ann. § 161.001(1)(E). Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* Tex. Fam. Code Ann. § 161.001(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the

child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). Moreover, a parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). To determine whether termination is necessary, courts may look to parental conduct occurring both before and after the child's birth. *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

### 3. Discussion

The evidence is legally sufficient to support the trial court's finding that Appellant "engaged in conduct or knowingly placed [M.E.-M.N.] with persons who engaged in conduct which endangered [M.E.-M.N.'s] physical or emotional well-being." *See* Tex. Fam. Code Ann. § 161.001(1)(E). The Department filed this case after receiving a referral alleging that Appellant was found passed out in her car at the methadone clinic while M.E.-M.N. was present. Appellant testified and denied the incident, but she subsequently acknowledged that she was withdrawing from hydrocodone when she went to the methadone clinic and testified that she had pneumonia and suffered from an overdose of a mixture of antibiotic and methadone. Appellant further testified that she had been going to the clinic for opiate addiction for five and one-half years, but she admitted that she had not been there for more than a year before trial, had not received drug treatment since that time, and had four positive drug tests during the pendency of

11

the case.  Appellant denied ever using cocaine or methamphetamines but could not explain why she had tested positive for both (as well as other drugs) in April and May 2008.  In addition, both she and M.E.-M.N. tested positive for cocaine at the beginning of the case in May 2008, which was the basis, she believed, for M.E.-M.N. being taken by the Department.  Further, the man with whom Appellant and M.E.-M.N. lived at the beginning of the case also admitted having a problem with cocaine.

Appellant acknowledged that she also struggled with an addiction to Xanax; pleaded no contest in 1999 to felony prescription fraud; refused to take a drug test in January 2009;[7] and made numerous visits to a hospital emergency room during the pendency of the case for relatively minor conditions, receiving pain medication on most of those visits.[8]  After this case was filed, Appellant was indicted for endangerment of her child (arising out of M.E.-M.N.'s exposure to cocaine), and she received deferred adjudication after pleading no contest.  Appellant subsequently had her bond revoked on the prescription fraud charge and was jailed, during which time her services were abated, and she was unable to schedule them until the middle of August prior to trial in September 2009.

Appellant testified that, although she had neither sought nor received treatment for her addictions while this case was pending, she and her probation

---

[7]The trial court may infer from a refusal to take a drug test that Appellant was using drugs.  *See J.T.G.*, 121 S.W.3d at 131.

[8]Appellant denied seeking pain medication from healthcare providers when she was unable to get a "fix" on the street.

officer were working on placing her in outpatient treatment. Further, Appellant admitted that she did not appear for her psychological examination, did not attend parenting classes, did not attend counseling, and did not complete her drug and alcohol assessment. The only evidence of employment was Appellant's testimony that she was employed part-time as a caretaker of an elderly woman, but she admitted that her caretaker's license had expired. She also conceded that she does not have stable housing. In general, Appellant conceded in her own testimony that she had "not done nearly enough" to show the court that she could provide a safe environment for her child. She said she had followed the advice of her previous attorney in the beginning and had not started working her services because her prior attorney wanted them done as he requested them.

Finally, Appellant's mother testified that she had successfully petitioned for termination of Appellant's parental rights to her two oldest children because of Appellant's addiction to painkillers.[9] Except for calls from Appellant on the older children's birthdays, Appellant's mother has no contact with Appellant or M.E.-

---

[9]Appellant initially agreed to give her mother custody of Appellant's two oldest children. Appellant lived in her mother's home for a while and attended outpatient treatment, but she did not obey the facility's rules. Appellant's mother testified that she subsequently petitioned the court for termination of Appellant's parental rights after having custody of the children for five years because she believed that Appellant was not going to get treatment for her addiction and that the children needed permanency. In that case, Appellant had counsel and fought the termination of her rights, but she did not follow the requirements of getting treatment, establishing a residence, or maintaining employment.

M.N., and Appellant's mother does not know where Appellant lives, who her friends are, or where she works.

Stability and permanence are paramount in the upbringing of children. *See In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). Drug use and its effect on a parent's ability to parent may establish an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *R.W.*, 129 S.W.3d at 739; *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Further, "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re J.A.G.*, No. 02-10-00002-CV, 2010 WL 4539442, at *1 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op.) (quoting *In re J.W.*, No. 02-08-00211-CV, 2009 WL 806865, at *4 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.)). Even assuming, as Appellant contends, that the caseworkers' testimonies were conclusory, there was ample additional evidence in the form of Appellant's own testimony and that of her mother that supports the trial court's endangerment finding.

Viewing all the evidence in the light most favorable to the termination judgment, and disregarding all contrary evidence that a reasonable fact finder could disregard, we hold that the evidence is legally sufficient to support a fact finder's firm conviction or belief that Appellant engaged in conduct that endangered M.E.-M.N.'s physical or emotional well-being. *See* Tex. Fam. Code

14

Ann. § 161.001(1)(E); *J.P.B.*, 180 S.W.3d at 573; *In re S.G.S.*, 130 S.W.3d 223, 238 (Tex. App.—Beaumont 2004, no pet.). Because the evidence is legally sufficient to support the trial court's section 161.001(1)(E) finding, we need not address whether the evidence is also legally sufficient to support the trial court's section 161.001(1)(D) finding. *See In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (stating that a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination). We overrule the second issue in Appellant's supplemental brief.

## V. Conclusion

Having held that the trial court did not have jurisdiction on May 6, 2010, to find Appellant's appeal frivolous, and having overruled Appellant's remaining issues, we affirm the trial court's order terminating Appellant's parental rights to M.E.-M.N.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: May 26, 2011